### W. H. PRICE ET AL. V. P. S. COBLITZ ET AL.

**1. PAYMENT—RULE AS TO NOTES GIVEN FOR RENT.**

The giving of a promissory note by a debtor for the amount of an existing indebtedness is presumed not to be in payment of the debt, but as collateral thereto. Therefore, in an action for rent, wherein it appears that certain notes, equal in amount to the rent due for certain months, were given by one of the tenants, unless it appears from the evidence that the plaintiffs or their duly authorized agent agreed to accept them in payment for the rent, such notes cannot be regarded as in payment thereof.

**2. AGREEMENT TO SURRENDER UPON PROCURING NEW TENANT.**

When an agreement is made by the owners of a store building, occupied by tenants under a lease for years, to try to rent the same to other parties and release the lessees whenever the former procures a permanent tenant, such release does not become operative until such permanent tenant is procured; the renting of a part of the store room for transient purposes would not release the lessees.

**3. CHARGE AS A WHOLE SHOULD GOVERN.**

The verdict of a jury will not be disturbed on account of a clause in a charge which if given alone would have been wrong, where by a consideration of the entire charge it appears that the jury could not have been misled. Thus na improper statement in one part of the charge that the only issue the jury had to try, etc., thus ignoring another question, is not ground for reversal where the question ignored was properly submitted in another part of the charge.

**4. IRRELEVANT TESTIMONY—ADMISSION NOT PREJUDICIAL.**

Judgment will not be reversed on account of the admission of irrelevant testimony where it cannot be said to have been prejudicial. Thus the admission of testimony of an agent of a lessor concerning a surrender of leased premises, but which failed to establish a release, and therefore became irrelevant, is not ground for reversal.

HEARD ON ERROR.

*Hart, Canfield & Co.*, for defendants in error.
*Bently & Vickery*, for plaintiffs in error, cited:
Barnes v. Trust Co., 169 Ill., 112, 119 [48 N. E. Rep., 31]; 15 Wend. 400; 1 Cr. & M., 188, and note; Wood on Land. and T., 827, 848; Alsup v. Banks, 68 Miss. [24 Am. St. Rep., 294, 13 L. R. A., 598]; Bank v. Green, 40 Ohio St., 431.

MARVIN, J.

The plaintiffs in error brought suit in the court of common pleas against the defendants in error to recover rents claimed to be due upon a written lease executed to the defendants by one T. D. Crocker, upon certain premises owned by said Crocker at the time the lease was executed, but purchased from him by the plaintiffs during the term of the lease, and while the defendants were occupying under such lease.

By its terms the lease was to end on March 31, 1899. No question is made but that the plaintiffs, if anybody, were entitled to recover the rent sued for, which was for a part of the month of January and all of the months of February, March and April, 1898.

No question is made but that by agreement of the parties the lease was terminated as early as May 1, 1898.

On the part of the defendants it is claimed that it terminated by such agreement on March 1, 1898.

The testimony on this point is confl' ing. The jury found for the defendants, and we are not prepared to say that they made a mistake in so finding.

Another question made in the case, is a claim on the part of the defendants, that on either the first or s cond day of March, 1898, the plaintiffs accepted three notes given to them by the defendant Colton in full payment of the rent which had accrued up to that time.

It is admitted by the plaintiffs that notes for the proper amount then due upon the lease were given to them by Colton at that time, but they say, and introduce evidence tending to show, that such notes were only given as collateral to the original indebtedness created by the lease. The evidence of the defendants tends to establish their claim in that regard.

The court charged the jury as requested by the plaintiffs on this proposition, as follows:

" The giving of a promissory note by a debtor for the amount of an existing indebtedness, is presumed not to be in payment of the debt, but as collateral thereto."

And again: " Unless the jury find from the evidence that the plaintiffs themselves, or through an agent duly authorized, expressly agreed to accept the notes of Mr. Colton offered in evidence of the actual payment of the rent accrued to March 1, 1898, the jury cannot treat them as payment of such rent."

These requests given to the jury certainly stated the law as favorably to the plaintiffs as they asked, or could have asked, and the jury found for the defendants on this proposition. We are not satisfied that the jury made any mistake in this regard.

As has already been said, there was a dispute between the parties as to whether, by their agreement, the lease was terminated on March 1, or on May 1, 1898.

Complaint is made of this language of the court used in its charge to the jury: " So that really the only thing you are to try is the fact whether or not these notes, as claimed by the defendant, were thus accepted." That is to say, accepted in payment of the pre-existing indebtedness for rent, or only as collateral to such pre-existing indebtedness.

Taken alone, the language of the charge as quoted would be wrong, because there was another question to be tried by the jury, but taking the entire charge, we think the jury could not have been misled by this language. The court did submit to the jury the question of whether the plaintiffs had taken the premises off the hands of the defendants on the first of March, so as to release them from liability for rent after that date, and upon that question charged at the request of the plaintiffs, as follows:

" If the plaintiffs by their agent agreed to try to rent said store building to other parties and to release the defendant from said lease whenever the plaintiffs procured a permanent tenant for said premises, such release would not become operative until such permanent tenant was procured; and the renting of a part of said store room for transient purposes from day to day, for a week or ten days, or thereabouts, would

not release the defendants, and such temporary occupant of such part of said room would not be a permanent tenant."

Surely this could not have been understood by the jury as meaning anything except as bearing upon the question of whether the defendants were released from rent which could have accrued after the first of March.

A question is made as to the ruling of the court upon a question of evidence. This question arises in this way: The defendant Colton was upon the witness stand in his own behalf, and had testified that one McIlrath had acted to some extent as the agent of the plaintiffs in the collection of rent, and then was asked this question: "Did you have any conversation with Mr. McIlrath?" To which he answered, "I did."

Question. "How many times?" Answer. "Two or three times."

"You may tell those conversations; tell what they were." Answer. "I spoke to Mr. McIlrath, stating that I contemplated moving out of the premises and, of course, I did not wish any afterclap of any kind, and he said that could be arranged all satisfactory. And I saw him on another occasion, and he then stated that he had not seen Price and Stewart, but that I could rest assured that there would be no trouble about that later on, regarding the matter of rent and unexpired lease."

The witness was permitted to answer these questions over the objections of the plaintiffs; and, after giving his last answer, a motion was made to take it from the jury, which was overruled. Proper exceptions were taken to the ruling of the court upon these questions.

The witness stated that the conversation with Mr. McIlrath occurred sometime during the month of February, undoubtedly meaning February, 1898.

We think the testimony was irrelevant and should have been excluded because not bearing upon any issue in the case, for the conversation, as related by the witness, fails to show that McIlrath assumed to release the defendant from the payment of rent. At the first of these conversations, McIlrath said that the matter of Colton's retiring from the premises could be arranged; he did not then assume to arrange it. In the next conversation he stated that he had not seen Price and Stewart, clearly conveying to Colton that they were the ones to actually determine whether he would be released; but McIlrath added that Colton might rest assured that there would be no trouble about it. This does not amount to any arrangement made by McIlrath for the plaintiffs to release Colton and, as already said, did not tend to establish the position taken by the defendants.

Though this was irrelevant, as it had no bearing on the case, we think it cannot be said to have prejudiced the rights of the plaintiff and would not justify the reversal of the judgment which is affirmed.